CORD *v.* PLESS.

1. NEGLIGENCE — PERSONAL INJURIES — EVIDENCE — SUFFICIENCY— QUESTION FOR JURY.

In an action for personal injuries caused to plaintiff when the buggy in which she was sitting in a village street was struck from the rear by defendant's automobile, driven by his son with his consent, evidence *held*, sufficient to carry the question of the son's negligence to the jury.

2. SAME—DECLARATION—SUFFICIENCY—STATUTES.

A declaration prolific in details of the accident, fully advising of plaintiff's version of just what took place, and fairly informing defendant of the nature of plaintiff's case, with averments of duty and failure of duty of defendant's son, the driver of the automobile causing plaintiff's injuries, *held*, to be sufficient under the judicature act (3 Comp. Laws 1915, § 12454), although inartificially drawn; the word "negligence" being nowhere made use of.

3. SAME—TRIAL—INSTRUCTIONS.

*Held*, that the charge of the court plainly presented the issue of the negligence of defendant's son within the scope of the declaration, and that there was no reversible error in the charge as given, or in the rejection of requests to charge.

4. APPEAL AND ERROR—EVIDENCE—DAMAGES.

In an action by a married woman for personal injuries, testimony by plaintiff that her family consisted of her husband and four children, *held*, not reversible error, where the damages awarded are persuasive that they were not magnified thereby, although generally it is error to show and emphasize the fact that plaintiff has dependent children.

5. SAME—OPINION—EVIDENCE—CONCLUSION OF FACT.

While it has been held that the proper question as to cause of conditions found by a physician in a patient
216—Mich.—3.

was what might have caused them rather than what did
cause them, because the latter was a question of fact
for the jury, that distinction in many cases is of doubtful
value, and where it appears undisputably that the
damages were not enhanced by the physician's answer
that in his opinion plaintiff's condition was caused by
the accident, the judgment for plaintiff will not be re-
versed therefor, on error.

Error to Livingston; Collins (Joseph H.), J. Sub-
mitted June 7, 1921. (Docket No. 10.) Decided
October 3, 1921.

Case by Nina Cord against Fred Pless for personal
injuries. Judgment for plaintiff. Defendant brings
error. Affirmed.

*W. P. Van Winkle & Son* and *Louis E. Howlett,*
for appellant.

*Francis J. Shields* and *Edmund C. Shields,* for ap-
pellee.

STEERE, C. J. Plaintiff recovered a judgment of
$1,000 in the circuit court of Livingston county against
defendant for personal injuries resulting from his
son Harlow, a young man under 21 years of age,
running defendant's automobile, which he was driv-
ing with his father's permission, into a buggy in
which she was sitting, throwing her out, breaking her
arm and otherwise seriously injuring her, to just
what extent is a matter in dispute. The accident
occurred in the village of Brighton at about 10 o'clock
in the evening of April 27, 1918, on Main street which
extends easterly and westerly through the business
section of said village. Plaintiff was a married
woman over 47 years of age living with her husband
John Cord and family on a farm in the township of
Genoa about 1½ miles east of the village. Defend-

ant was also a farmer living some 2 miles further east.

About 7 o'clock on the evening of the accident plaintiff and her husband started to the village of Brighton with a horse and open, single seated buggy. Their daughter Caroline, a girl about 18 years old, also went to the village that evening on horseback. Their horses were tied at separate places on Main street. They spent the evening there making purchases, attending a picture show, etc. Defendant owned a Reo touring car and on the same evening his son Harlow drove in it to the village of Brighton, parked the car on Main street and attended a picture show in company with a young man by the name of Shippey, who arranged to go home with him that night. Towards 10 o'clock plaintiff and her husband started home, traveling east on the right side of Main street, and met their daughter who was also about to go home and they went on to where her horse was hitched in front of a shop further east. Plaintiff's husband stopped their rig 7 or 8 feet from the right curb of the street which was 50 feet or more wide and got out to assist his daughter in mounting her horse. In the meantime after attending the show Harlow with his friend Shippey rode west down Main street in defendant's car and stopped on the north side of the street opposite a hardware store where they left the car for a short time and went into a store near by. They met two girls in that locality with whom they visited for a time and eventually went back east down Main street in defendant's car, taking with them one of the girls who lived east of the village and got in with them to ride to her home. How often Harlow had driven up and down Main street before this is a matter in dispute, but when plaintiff's husband stopped and got out of the buggy to help his daughter mount her horse he was driving east on Main street behind the buggy faster than the buggy

was going, and as plaintiff sat in it after it stopped, facing east, waiting for her husband, defendant's automobile driven by Harlow ran into the rear of the buggy with such force as to tip it up, or over throwing her with the buggy seat, blankets and groceries out into the street. She fell on her head and shoulders and back, bruising them and breaking her arm, with other injuries the extent of which is in dispute. The accident occurred at a point in the street where there were no other vehicles, crowd or confusion of traffic in the vicinity, and plenty of room to pass the standing rig on the left.

Plaintiff charged that defendant's son Harlow negligently operated his automobile in traveling at an excessive and illegal rate of speed, without lights, with the auto brakes rusty, defective and not in good working order and the auto ran 2 or 3 rods after it hit the buggy before it came to a stop. For defendant it was claimed that the auto was lighted and in good condition; Harlow was following plaintiff's buggy at a slow rate of speed but as he came up to about 10 or 12 feet behind it to pass on the left the buggy suddenly stopped without any warning directly ahead of him in the traveled portion of the street and he immediately did everything possible to avoid a collision; but was unable to stop before he reached the buggy and in turning aside to clear it he just struck its left hind wheel with the right hand corner of the auto bumper, tipping it up so that plaintiff fell out, the auto coming to a standstill immediately thereafter. The jury in returning its verdict apparently accepted plaintiff's version of conditions when the accident occurred and accordingly found that the buggy in which plaintiff sat was standing still in a proper place on the highway convenient for others to pass, while defendant's automobile negligently driven by his son coming rapidly

from the rear struck and tipped it over, causing the injuries shown.

There was abundant testimony to carry the question of Harlow's negligence to the jury. Certain of his own testimony tended in that direction as the following excerpts indicate. On direct-examination he said in part:

"The buggy was directly in front of me, and I was traveling a little faster than the buggy. When I was about 10 or 12 feet from the buggy it stopped suddenly without any warning that it was going to stop. * * * As soon as the buggy stopped in front of me I got to the left as far as I could swing. * * * I was unable to stop the car before I struck the buggy and was unable to pull the car to the left. * * * The right hand corner of the bumper struck the left hind wheel of the buggy. * * * After striking the buggy my car came to a standstill."

On cross-examination he first set his speed at "6 to 10 miles an hour," which he subsequently changed to "6 to 7 miles per hour" when he was 25 feet away and further said:

"I did not see anyone get out of the rig. * * * There was plenty of room to pass on the left-hand side, and there was nothing between the rig and the curb on the left-hand side in the shape of rigs. * * * I had 25 feet in the clear to swing my car to the left. * * * I did start to turn to the left. If I had turned my car right short off then I would have missed the rig. * * * I started to turn out but I traveled along a bit further in turning out. I started to turn out gradually. Within that 25 feet I could have easily stopped the car with the brake going 6 miles an hour. * * * When I was 10 or 15 feet from the buggy I was going 8 miles an hour, and I saw the buggy stop. I was still trying to turn out and had started to turn out when I was 15 feet back of them. * * * When I was about 10 feet back of the rig it came to a standstill and some one stepped out. * * * The car stopped as soon as I hit the rig."

Other witnesses who saw and heard the accident testify to seeing the rig standing still as the car coming up behind struck it with a "crash," and that the car ran 2 or 3 rods after it hit the rig before it stopped in front of a livery barn.

Harlow was a minor about 19 years of age and defendant's liability for his negligence under the circumstances shown here is fixed by section 4825, 1 Comp. Laws 1915.

Defendant's 44 assignments of error are grouped by his counsel to the contentions that there was—

"(1)  Error in the charge of the court as given and in refusal to give defendant's requests to charge.

"(2)  Error in admission and rejection of evidence."

Under the first, defendant's counsel urge and argue in their brief that against their request the court submitted the case to the jury on a broader and different theory than that compassed by plaintiff's declaration, and as a basis for such contention quote an excerpt from page 6 of the declaration averring that:

—"the cause of said accident and the injury hereinafter described was the fact that the lights were not turned on on defendant's car and the excessive speed of the driver, Harlow Pless, in making the turn aforesaid with his said automobile and the fact that he was driving the car with a defective and impaired brake, and plaintiff avers that the said defendant's son, Harlow Pless, stated at the time of the accident that his brake was defective and rusty and that his lights were not much good anyway."

From this quotation it is claimed plaintiff's only grounds of negligence permissible for the jury to consider were absence of lights, excessive speed and defective brakes, there being no allegation in the declaration that "defendant failed to exercise due care or that he was negligent in running into and

upon the rear of plaintiff's buggy." The substance of defendant's rather technical argument against the court's charge and plaintiff's declaration considered together is, as we understand it, that the court did not clearly limit the deliberations of the jury to consideration of the three lamely stated grounds of negligence charged in the declaration, and various authorities are cited to the undoubted rule that matters of negligence to which the injurious consequence is referred must be properly averred.

In considering this complaint the singular fact must be admitted that in plaintiff's elaborate declaration in tort for damages resulting from negligence on the first 8 pages of this record, the very appropriate word "negligence" is nowhere made use of; but we are persuaded that by elaborate circumlocution its import is fairly sounded in the story told and charges made. The declaration is prolific in details of the accident, fully advising the reader of plaintiff's version of just what took place and fairly informing defendant of the nature of her case, with averments of duty and failure of duty on the part of the driver of the auto which struck the buggy in which she was sitting.

By the judicature act (3 Comp. Laws 1915, § 12454) it is provided:

"In the actions which are in this act retained, the forms of declaration now in common use may be employed; but no declaration shall be deemed insufficient which shall contain such information as shall reasonably inform the defendant of the nature of the case he is called upon to defend."

This provision is incorporated in substance in Circuit Court Rule No. 22, dealing with the form and contents of declarations.

Preceding defendant's excerpt from page 6 of the declaration is an averment that it was the duty of defendant's son "to use every reasonable precaution

to insure the safety of said plaintiff and to prevent his automobile from running into the buggy occupied by said plaintiff;" and also the charge that he "failed to drive his car on said occasion in a reasonably proper and safe manner as required by the laws of the State of Michigan." Our automobile law imposes on a driver the duty to "use every reasonable precaution to insure safety." This language is in the following charged duty and failure of duty in the declaration:

"And the plaintiff avers that it thereupon became the duty of the said Harlow Pless to slow down the said automobile to a speed not exceeding 10 miles an hour, and to have control of said car, and the control of the brake of said car and to give reasonable warning of his approach, and to have proper lights for his automobile, and to use every reasonable precaution to insure the safety of said plaintiff and to prevent his automobile from running into the buggy occupied by said plaintiff. * * * That because of the failure of said Harlow Pless to perform his duty as above set forth he ran the front end of defendant's automobile into the rear end of the buggy in which plaintiff was seated," etc.

Defendant presented 19 requests to charge, 8 of which appear to have been given verbatim with much of the others in substance. Counsel's claim that the court submitted the issues of fact to the jury on broader grounds than those laid in the declaration is mainly based on fragmentary excerpts therefrom which if standing alone might give color to the contention, but when considered with their context and in connection with the charge taken as a whole are not misleading.

Referring to the statutory violations charged in the declaration the court instructed the jury that the law required the car when driven to be equipped with adequate brakes to control it, lighted with at least one lighted lamp visible from at least 200 feet in the

direction it was going, explained the statutory provisions as to permissible rates of speed, and as applied to the situation at the time and place of the accident said:

—"and it was further his (Harlow's) duty as he approached the buggy upon this night, to slow his motor vehicle down to a speed not exceeding ten miles an hour and to give reasonable warning of its approach and use every reasonable precaution to insure the safety of the horse, the buggy and its occupants."

Having in a general way explained the law applicable to the charges in plaintiff's declaration, the court then, as applied to the case made for the jury by the evidence, narrowed those charges by elimination as follows:

"Now, I charge you that there is no evidence in this case that Harlow Pless was driving in excess of ten miles an hour upon that occasion or that he did not slow down his car to a speed not exceeding ten miles an hour as he approached the buggy; nor is there any evidence that the car Harlow Pless was driving was not equipped with adequate brakes sufficient to control the car at all times. So you are not to find the defendant's son was guilty of any negligence on that occasion in those respects. And I charge you that if defendant's son, the driver of the car, failed in the performance of any of the other duties that I have stated he owed to the plaintiff under the law, then such violation constitutes negligence in itself.
* * *

"I further charge you that even though you should find defendant's son guilty of negligence in failing to avoid plaintiff's rig, and should further find that either plaintiff or plaintiff's husband was guilty of negligence in stopping their rig where they did, which stopping contributed in some degree to the accident, then plaintiff cannot recover in this suit.   * * *

"I further charge you as to whether or not lights were burning on the automobile is a disputed fact under the evidence, and I further charge you that there is no evidence that the said Harlow Pless gave

any warning of his approach. I therefore charge you that unless you find from the evidence that Harlow Pless did not have lights burning on the front of his car, or that he failed to give reasonable warning of his approach, and unless you further find that failure to have lights on his car or to give warning of his approach was the proximate cause of the injury, then plaintiff cannot recover for violation of the statutes of the State by the defendant, in those respects."

The issues of this accident are not complicated in the law or facts involved. We think the charge plainly presented the issues for the jury within the scope of the declaration and find no reversible error in the charge as given, or the rejection of requests.

Many errors are assigned on the admission and rejection of testimony. They have all been examined with care and but two impress us as beyond the discretion of the court or bordering on an invasion of the technical rules of evidence. When plaintiff was called as a witness she was allowed in her preliminary, or introductory, examination as to age, residence, family relations, etc., to state that her family consisted of her husband and four children. Objection was made at the time to any testimony in regard to her having children. On her counsel stating it was merely preliminary, to get the "surrounding scenery," with no relation to damages, it was allowed to stand and passed over by the court with the remark that no question of recovery for injuries was involved except as to her. The subject was not thereafter referred to by plaintiff's counsel, except it was shown an 18-year-old daughter was at the scene of the accident, as related, but on her cross-examination defendant's counsel interrogatively claimed against her denial that following her injuries she had asked defendant to take her two little girls to town in the same automobile, and questioned her as to their ages, to which

she replied they were respectively 9 and 14 years of age. While this court has held it error in certain cases to show and emphasize that plaintiff had dependent children, because tending to prejudicially arouse, sympathy and magnify damages, the damages awarded here are persuasive that such was not the result.

Dr. Mellus, of Brighton, gave testimony tending to show that plaintiff's injuries had resulted in shattering her nervous organization, the particulars of which he described, when her counsel asked and was answered as follows:

"*Q.* Could those conditions which you discovered both physical and as to her nervous system be caused by the blow she received from the automobile accident?

"*A.* It could have been.

"*Q.* In your judgment, was it?"

To which defendant's counsel objected as incompetent and the witness was allowed to answer, "I believe it was produced by the accident." This is insisted upon as reversible error since, as said in *People* v. *Hare*, 57 Mich. 505, "the question called for a fact which was to be found by the jury." To the same point counsel also cite *Hitchcock* v. *Burgett*, 38 Mich. 501; *Van Deusen* v. *Newcomer*, 40 Mich. 90.

Dr. Mellus cared for plaintiff immediately after the accident and regularly attended her professionally thereafter because of her injuries until July 31, 1918. He testified that her physical examination after the accident disclosed "a laceration, bruises and contusions of the shoulder, upper arm, upper forearm and back, over the hip, extreme tenderness over the whole back, neck and lower portion of the back," also that he found "a fracture of the radius, upper third of the left arm. The left forearm showed marked swelling, discoloration, pain and crepitus on motion," and was

"broken all the way through." The testimony was undisputed that she suffered extreme and protracted pain from those injuries. There was also testimony, both lay and medical, that the accident resulted in an apparently permanent nervous affection, called by Dr. Mellus "cervical and bronchial neuritis." He was describing that condition when he was asked and answered the question objected to.

Heavy increased damages were contended for by reason of this claimed permanent affliction, which was disputed. While it has been held that the proper question as to cause of conditions found by a physician was what might have caused them rather than what did cause them, because the latter was a question of fact for the jury, that distinction was held in *People* v. *MacGregor*, 178 Mich. 436, to be in many cases of doubtful significance. The court quoted with approval from Rogers on Expert Testimony, § 49, in part as follows:

"Neither do we appreciate the fine distinction sometimes said to be drawn between asking the expert whether, in his opinion, certain causes might produce certain results, and asking him whether, in his opinion, they did produce certain results."

Whatever view is taken of this distinction we consider it of scant importance here, inasmuch as the damages awarded could not be regarded as excessive for the immediate injuries and result indisputably shown and it cannot be said the error, if any, was reflected in the verdict.

We find no reversible error in this case, and the judgment will stand.

MOORE, WIEST, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.