PEOPLE *v.* SINCLAIR.

1. CRIMINAL LAW—PRELIMINARY EXAMINATION—MANSLAUGHTER BY
   ABORTION—CORPUS DELICTI—EVIDENCE.

   Testimony at preliminary examination showing that defendant
   had taken deceased into a bedroom for the ostensible purpose
   of performing an abortion, had made certain statements rela-
   tive thereto as to what to expect, was paid $50 for his serv-
   ices, deceased died 16 days later from septic abortion and
   that autopsy revealed recent uterine injuries and that she had
   been pregnant until a time estimated from 2 to 5 weeks be-
   fore death, showed *corpus delicti* and justified the examining
   magistrate in binding defendant over for trial on charge of
   manslaughter resulting from an abortion (CL 1948, § 750.14).

2. SAME—PRELIMINARY EXAMINATION—USE OF TRANSCRIPT AT TRIAL
   —DILIGENCE IN ATTEMPT TO PROCURE WITNESSES.

   Transcript of testimony of doctor who had performed autopsy
   and who had been thoroughly cross-examined at preliminary
   examination was properly admitted at trial of defendant on
   charge of manslaughter resulting from abortion, where sub-
   poena was issued for such doctor and a police officer's long
   distance call to St. Louis, Missouri, where the doctor was then
   employed, revealed his inability to attend the trial, since a
   reasonable effort was made and sufficient diligence exercised
   to produce the witness who was outside the jurisdiction of
   process issued by courts of this State (CL 1948, § 750.14).

REFERENCES FOR POINTS IN HEADNOTES

[1] 14 Am Jur, Criminal Law, § 241; 26 Am Jur, Homicide, §§ 326,
    461, 462.
[2] 20 Am Jur, Evidence, §§ 705, 706.
[3] 26 Am Jur, Homicide, § 516.
[4] 3 Am Jur, Appeal and Error, §§ 1027–1029; 20 Am Jur, Evi-
    dence, §§ 867–869.
[4] Admissibility of opinion evidence as to cause of death, disease,
    or injury.  136 ALR 965.

3. SAME—MANSLAUGHTER BY ABORTION—CHARGE TO JURY.
   Charge to jury when read as a whole precludes finding jury
   could have been misled into concluding that proof of abortion
   was alone sufficient to permit them to find defendant guilty
   of manslaughter resulting from abortion, notwithstanding an
   isolated portion of the charge did not include that death of
   the woman must result in order to be guilty of the crime of
   manslaughter (CL 1948, § 750.14).

4. SAME—MANSLAUGHTER BY ABORTION—EXPERT TESTIMONY.
   Admission of testimony of physicians as to medical conclusions
   as to cause of death, based upon actual examination of de-
   ceased's organs during autopsy and, in the case of one phy-
   sician, also upon observations while treating the fatal condi-
   tion during the last week of deceased's life, being within the
   realm of their specialization and based upon actual observa-
   tion, was not reversible error amounting to a miscarriage of
   justice, especially where the defense rested without offering
   any proofs and the ample testimony of the prosecution's wit-
   nesses was uncontradicted (CL 1948, § 750.14).

Appeal from St. Clair; George (Fred W.), J. Submitted April 13, 1950. (Docket No. 59, Calendar No. 44,236.) Decided May 18, 1950.

Lawrence Sinclair was convicted of manslaughter resulting from abortion. Affirmed.

*Mann & Ash,* for appellant.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Reg. S. Atkins,* Prosecuting Attorney, and *Delmer L. Cleland* and *Robert J. McIntosh,* Assistant Prosecuting Attorneys, for the people.

BUTZEL, J. Lawrence Sinclair has appealed a conviction of the statutory crime of manslaughter (CL 1948, § 750.14 [Stat Ann § 28.204]) resulting from an abortion performed upon Roemelda Reisig, a 20-year-old single woman whose death occurred in Port Huron, Michigan, on October 30, 1947.

On the preceding October 13th, Roemelda and her mother visited an osteopath in Lexington, Michigan, and the deceased underwent a pelvic examination made both bimanually and by means of the insertion of a speculum. She was found to be pregnant and the osteopath refused to perform an abortion when so requested.

That evening Mrs. Reisig visited the defendant, a layman, to inquire whether he could terminate her daughter's pregnancy and, if so, by what method. His answer was in the affirmative, that: "I inject a solution into the uterus." He informed her that his charge would be $50 and that there were 2 doctors whom he could call should anything go amiss.

The mother thereupon visited a local farmer whom she considered was responsible for her daughter's condition and declared that she wanted something done about the situation. The following day this man visited the defendant, of whom he had heard, and defendant told him that Mrs. Reisig made arrangements the prior evening. Defendant also stated that his fee to take care of the matter would be $50.

On the evening of October 15th, the farmer drove the deceased and her mother to defendant's house. Roemelda and the defendant went into the bedroom for a period of 5 to 15 minutes while Mrs. Reisig and the farmer remained in the parlor. When the deceased returned she had her girdle in her hand and her skirt was unhooked. Mrs. Reisig expected Roemelda to stay over night but defendant said, "No, that isn't necessary. You can take her home with you now. Nothing will occur for about 12 hours and in 24 it will be all over." He also said, "Whenever it is necessary you call me up and I'll come out and get her."

Roemelda and her mother went out to the car and the farmer followed a few moments later after

paying defendant $50. Roemelda, upon returning home, started to flow and was put to bed. She was quite sick all night.

The next day Roemelda was suffering a great deal of pain and Mrs. Reisig called defendant at about 2 p.m. He came to the house a short time later and Roemelda was taken to his home, where she stayed over night. Defendant advised Mrs. Reisig that it would be better for Roemelda if she remained on her feet. That evening Roemelda asked her mother to get defendant as "something is coming." Defendant was summoned from his nearby store. He came in, lifted Roemelda from the davenport on which she was lying and carried her into the bedroom. After picking up a clot or mass which Roemelda expelled, he stated:

"Everything came away clean. You haven't anything to worry about."

The next morning Roemelda was taken to her aunt's home where she subsequently was visited by defendant.

Roemelda was returned home on Sunday, October 19th. Her condition began to alarm Mrs. Reisig and on Monday or Tuesday the mother called the defendant and he visited the deceased on Wednesday. On that occasion he said, "She is doing all right," and "I've often had them in two weeks at a time; she'll come out of it." On Thursday Mrs. Reisig went to defendant's house and told him that a doctor must be called. The defendant thereupon called a doctor's registry and a physician came to the house.

Roemelda was immediately rushed to the hospital where she died a week later. A partial autopsy showed inflammation and peritonitis in the abdominal cavity, particularly in the pelvic region. The uterus was found to be considerably enlarged; there was an internal laceration on its wall; a large mass

of its lining, which appeared to have been forcibly removed from its normal position, was projected into the uterine cavity; and there were three lacerations or scratch marks found on the cervix.

One of the physicians who performed the autopsy testified at the examination, without objection, that in his opinion death was caused by septic abortion. The transcript of his testimony was introduced at the trial. The other physician, who had treated deceased during the last week of her life as well as performing the autopsy, testified at the trial, over objection, that in his opinion based upon the clinical and pathological findings, death was caused by septic abortion, not self-induced and not accidental.

Defendant contends that the case should have been dismissed at the preliminary examination for failure of the introduced testimony to show either the commission of the offense or probable cause for charging defendant therewith. CL 1948, § 766.13 (Stat Ann § 28.931). There was competent evidence at the examination to show that defendant was consulted with regard to ending deceased's pregnancy; that he stated he would be able to do so; that defendant took Roemelda into the bedroom for 10 or 15 minutes for the ostensible purpose of performing the abortion; that upon returning from the bedroom he stated, "nothing will be apt to happen inside of 12 hours and in 24 hours it will be all over;" that he was thereupon paid $50 for his services; that the deceased expelled a clot on the following day, whereupon defendant said, "everything came away clean, you haven't a thing to worry about;" that deceased was very ill after the acts charged; that she died 16 days later of septic abortion; and that the autopsy revealed recent uterine injuries and that the deceased had been pregnant until a time estimated from 2 to 5 weeks before death. The *corpus delicti* was thus shown. The municipal judge did not err

in binding defendant over for trial. *People* v. *Southwick,* 272 Mich 258; *People* v. *Karcher,* 322 Mich 158.

Defendant asserts that the trial court erred in permitting the testimony of one of the doctors given at the examination to be read at the trial. The witness had performed the autopsy. Defendant contends that a diligent effort had not been made to produce him at the trial. The record shows that a subpoena was issued but could not be served, as the doctor was employed in a St. Louis, Missouri, hospital. A police officer made a long distance call, spoke to the doctor, informed him of the subpoena and asked him if he would be able to come to Port Huron on the trial date. The doctor replied that it would be impossible for him to attend the trial. We hold that, under the circumstances stated, a reasonable effort was made and sufficient diligence was exercised to produce the witness who was outside the jurisdiction of process issued by courts of this State. The witness had been very thoroughly cross-examined in the municipal court proceedings and the transcript of his testimony, having been duly authenticated, was properly admitted. *People* v. *Schepps,* 217 Mich 406 (21 ALR 658); *People* v. *Harvey,* 220 Mich 226; *People* v. *Mascz,* 226 Mich 187; *People* v. *Veitenheimer,* 229 Mich 409; *People* v. *Myers,* 239 Mich 105; *People* v. *Hawthorne,* 293 Mich 15; *People* v. *Hunley,* 313 Mich 688.

The defendant claims error was committed by the following portion of the charge to the jury:

"The statute defining the offense of abortion provides, in part, as follows:

" 'Any person who shall wilfully administer to any pregnant woman any medicine, drug, substance or thing whatever, or shall employ any instrument or other means whatever, with intent thereby to procure the miscarriage of any such woman, unless the

same shall have been necessary to preserve the life of such woman, shall be guilty of a felony, and in case the death of such woman be thereby produced, the offense shall be deemed manslaughter.'

" 'In any prosecution under this section it shall not be necessary for the prosecution to prove that no such necessity existed.'

"In a prosecution under this section, it is necessary for the people to prove, first, the administering of some medicine, drug, or substance, or the employment of any instrument by the defendant for the purpose prohibited by the statute; second, the pregnancy of the woman; and third, the intent to produce an abortion, and unless all of these elements are established by the prosecution, it is your duty to acquit the defendant."

Standing alone the last paragraph of the above instruction would be clearly erroneous as it states only the elements of abortion and neglects to state that the death of the woman must result in order for the offender to be guilty of the crime of manslaughter. However, the omission is supplied in later portions of the charge which contain the following language:

"I further charge you, members of the jury, that if you believe that the said Roemelda Reisig died from natural causes, you should find the defendant not guilty.

"I further charge you that if from the testimony you find that the infection from which Roemelda Reisig died could have been caused by means not associated with the defendant, you should find the defendant not guilty."

And:

"I further charge you that even if you find that a solution was injected into Roemelda Reisig by the defendant, that before you can find the defendant guilty, the prosecution must prove beyond a reason-

able doubt that  *  *  *  her death was the direct and natural result of the injection of said solution."

It is clear from reading the charge as a whole that the jury was not misled and could not have concluded that proof of abortion was alone sufficient to find defendant guilty of manslaughter. *People* v. *Robertson,* 301 Mich 100.

The admission of the testimony of the physicians as to their opinion of the cause of death is claimed reversible error. We are mindful of the dangers inherent in the unrestricted utilization of expert testimony. See *People* v. *Sessions,* 58 Mich 594; *People* v. *Vanderhoof,* 71 Mich 158. In the instant case the physicians testified as to medical conclusions based upon actual examination of the deceased's organs during autopsy and, in the case of one of the physicians, also upon observations while treating the fatal condition during the last week of deceased's life. The question was of a technical matter within the realm of their specialization and based upon actual observation. *People* v. *Hare,* 57 Mich 505; *People* v. *Barker,* 60 Mich 277 (1 Am St Rep 501); *Chadwick* v. *Phoenix Accident & Sick Benefit Association,* 143 Mich 481 (8 Ann Cas 170); *People* v. *MacGregor,* 178 Mich 436; *Cord* v. *Pless,* 216 Mich 33. See the exhaustive collation of cases in 136 ALR 965 on admissibility of opinion evidence as to cause of death. The interrogation and reply did not fall within the prohibition of *People* v. *Fritch,* 170 Mich 258, where the objectionable opinion testimony that a *criminal operation* had been performed, went to the ultimate legal question. Even if there were any merit to the objection, in the light of the entire record, we would be unable to say that the ruling resulted in a miscarriage of justice. CL 1948, § 769.26 (Stat Ann § 28.1096). The defense rested without offering any proofs and the ample testimony of the prosecution's witnesses was uncontradicted.

We have given careful consideration to the additional allegations of error and do not find them of sufficient merit to require discussion. The conviction is affirmed.

Boyles, C. J., and Reid, North, Dethmers, Carr, Bushnell, and Sharpe, JJ., concurred.