PEOPLE *v.* HUNLEY.

1. CRIMINAL LAW—QUESTIONS REVIEWABLE—RECIPROCAL EXTRADI-
   TION STATUTE—BOND FOR APPEARANCE.
   Claim that companion to victim of homicide, who was present
   at preliminary examination but then stated he expected to
   be inducted into army shortly and would soon leave the State
   for Kentucky, should have been put under bond to appear
   as a material witness or should have been extradited under
   reciprocal extradition statute is not considered where, al-
   though made at the trial, it was not renewed in brief on
   appeal (Act No. 175, chap. 7, §§ 80, 81, Pub. Acts 1927,
   as added by Act No. 309, Pub. Acts 1931, and amended by
   Act No. 246, Pub. Acts 1935, and Act No. 218, Pub. Acts
   1939).

2. EXTRADITION—RECIPROCAL STATUTE.
   The reciprocal extradition statute only applies to extradition
   from States which have such a reciprocal statute (Act No.
   175, chap. 7, §§ 80, 81, Pub. Acts 1927, as added by Act No.
   309, Pub. Acts 1931, and amended by Act No. 246, Pub. Acts
   1935, and Act No. 218, Pub. Acts 1939).

3. CRIMINAL LAW—EXTRADITION OF MATERIAL WITNESS—CONSTRUC-
   TION OF STATUTE.
   The prosecution in a criminal case need not apply for certificate
   so as to extradite a material witness in a pending cause as
   the statute is not mandatory (Act No. 175, chap. 7, §§ 80, 81,
   Pub. Acts 1927, as added by Act No. 309, Pub. Acts 1931,
   and amended by Act No. 246, Pub. Acts 1935, and Act No.
   218, Pub. Acts 1939).

4. SAME—MATERIAL WITNESS—BAIL—STATUTES—LOSS OF TESTI-
   MONY.
   The statute authorizing the requiring of bail by a material wit-
   ness in a criminal prosecution permits the court to demand
   it if he believes that there would be a loss of testimony of
   such witness if he does not attend (3 Comp. Laws 1929,
   § 17249).

5. SAME—MATERIAL WITNESS—READING TO JURY TESTIMONY TAKEN BY EXAMINING MAGISTRATE.

Testimony of a material witness taken before an examining magistrate may be read to the jury in a criminal prosecution if the witness is not present and reasonable effort has been made to subpoena the witness.

6. SAME—MATERIAL WITNESS—READING TESTIMONY TO JURY—SUBPOENA—EXTRADITION.

It was not reversible error to read to jury testimony of material witness to homicide involved, where such testimony had been taken before examining magistrate, and accused, not then represented by counsel, did cross-examine him, notwithstanding the witness who had been subpoenaed was not placed under bond and prosecution made no effort to extradite him from Kentucky to which State he had said he was going as he was expecting to be inducted into army very soon, no showing having been made that Kentucky had a reciprocal extradition statute (Act No. 175, chap. 7, §§ 80, 81, Pub. Acts 1927, as added by Act No. 309, Pub. Acts 1931, and amended by Act No. 246, Pub. Acts 1935, and Act No. 218, Pub. Acts 1939).

7. SAME—TESTIMONY OF MATERIAL WITNESS—REPRESENTATION OF ACCUSED BY COUNSEL AT PRELIMINARY EXAMINATION—CROSS-EXAMINATION.

It is not necessary that one who is accused of crime be represented by counsel at preliminary examination in order to preserve the testimony of a material witness taken thereat, but only that accused be afforded an opportunity to cross-examine the witnesses confronting him.

8. SAME—EFFORT TO PROCURE ATTENDANCE OF MATERIAL WITNESS—DISCRETION OF COURT.

Whether or not a sufficient effort has been made to secure the attendance of a material witness to a homicide is a question for determination by the trial judge and not one for the jury.

9. SAME—EFFORT TO PROCURE ATTENDANCE OF MATERIAL WITNESS—DISCRETION OF COURT—PRESERVATION OF TESTIMONY TAKEN AT PRELIMINARY EXAMINATION—CROSS-EXAMINATION.

It was not an abuse of discretion on the part of the trial judge to deny request to procure attendance of material witness out of the State at the time of trial, where his testimony had been taken at the preliminary examination, and he was there cross-examined by the accused, who was not then represented by counsel, his testimony was largely corroborated by other witnesses, and in part admitted by defendant herself, although he

stated he was expecting to be inducted into army soon and was going to Kentucky, and he was subpoenaed, but not put under bond (Act No. 175, chap. 7, §§ 80, 81, Pub. Acts 1927, as added by Act No. 309, Pub. Acts 1931, and amended by Act No. 246, Pub. Acts 1935, and Act No. 218, Pub. Acts 1939).

10. HOMICIDE—INSTRUCTIONS—SELF-DEFENSE.

Failure of trial judge to give defendant's request to charge in prosecution for homicide of defendant's husband that the burden was upon the people to prove that defendant did not act in self-defense was not error in view of instruction given that defendant claimed she acted in self-defense and that she had a right so to act, with pertinent incidents leading up to the tragedy but casting the burden of proving defendant guilty beyond a reasonable doubt upon the prosecution, it not being incumbent upon the judge to charge that the burden was on the people to prove that the killing was not done in self-defense.

Appeal from Ingham; Carr (Leland W.), J. Submitted January 17, 1946. (Docket No. 84, Calendar No. 42,644.) Decided March 4, 1946.

Ada Hunley was convicted of manslaughter. Affirmed.

*Benjamin F. Watson* (*John Brattin,* of counsel), for appellant.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Daniel J. O'Hara,* Assistant Attorney General, and *Victor C. Anderson,* Prosecuting Attorney, for the people.

BUTZEL, C. J. Ada Hunley, defendant, was convicted of manslaughter. The crime occurred late in the evening of August 13, 1943, in White Oak township, Ingham county, Michigan. She was 45 and had a fifth-grade education. She had six children by a previous marriage and four more by Silas Hunley whom she married in 1930. He was younger

than defendant. In 1943 the family came from Kentucky to Michigan to work in the onion fields. Four young men not yet of age and a married couple also came from Kentucky and worked in the vicinity of defendant's home. The Hunleys led a dreary existence and lived on a low economic plane. Defendant worked hard, ran the home, looked after the children, worked in the onion fields and seemed to be a law-abiding citizen. For recreation Silas at times went with some of the young Kentucky lads to Stockbridge, a nearby village, where they did some drinking. The testimony would indicate that Silas would show the effects of the intoxicants though as a rule not in any marked degree. However, it caused altercations between himself and defendant. She also refused his sexual demands of an unusual nature. At one time she tried to have him arrested. Numerous quarrels arose. She claims he had attacked her with an ax and other instruments. She particularly objected to his using the car when intoxicated. There is ample testimony to show that defendant had been badly mistreated by her husband.

On August 13, 1943, he went to Stockbridge with some of the young men. He returned late in the evening. The car first passed the home, then was driven into the yard, whereupon she demanded that her husband get out of the car. When she took a shotgun and shot it in the air, he started to drive the car back to the road. As this had not the desired effect, she thereupon shot one of the tires of the car. He then got out of the car, grappled with her, and in the ensuing struggle she claimed that he took the gun from her with one hand and held her down with the other hand, whereupon in some way she was able to seize a knife used in the onion fields and struck him with great force. Thereafter he was able to go

to the front of the yard, where he collapsed and died. Defendant tried to tend to him, and upon being arrested, expressed her anxiety as to what would happen to the children.

It becomes unnecessary to discuss the testimony. It is conceded that defendant killed her husband. She claimed she did it in self-defense. A short resumé of her previous life shows that she had ample reason to fear him.

We shall discuss the principal claims of error relied upon. Among the several witnesses to the fatal quarrel was one Carue Allen who was in the car at the time. Carue testified before the magistrate on or about August 20, 1943. Defendant was present but had no attorney. She, however, acted as her own attorney and cross-examined Carue, asking him several questions. His testimony was corroborated in almost every detail by other witnesses. None of them could tell just what happened when she seized the onion knife and stabbed Hunley. Many things that Carue testified to were admitted by defendant when she took the witness stand. He did testify that he had heard her threaten to kill her husband on one or two previous occasions. This she denied, but admitted that she stated he ought to be killed. At the examination before the magistrate Carue stated that he expected to be inducted into the army shortly, that he was going to leave Michigan the following week for Kentucky. He was served with subpoena the same day ordering him to be present at the trial in the circuit court. He did not show up on September 29, 1943, and the testimony given before the magistrate was read to the jury. Defendant's attorney claims that Carue should have been put under bond to appear as a material witness, or that he should have been extradited from Kentucky under Act No. 175, chap. 7, §§ 80, 81, Pub. Acts 1927,

as added by Act No. 309, Pub. Acts 1931, as amended by Act No. 246, Pub. Acts 1935, and Act No. 218, Pub. Acts 1939 (Comp. Laws Supp. 1940, §§ 17293–1, 17293–2, Stat. Ann. 1945 Cum. Supp. § 28.1020, Stat. Ann. § 28.1021). This latter claim was made at the trial. It is, however, not renewed in the brief. There is no showing that such provisions of Act No. 175, as so amended, apply or that Kentucky has a corresponding reciprocal statute to Act No. 175, as so amended, which only applies to extradition from States that have such a reciprocal statute. In *People* v. *Serra,* 301 Mich. 124, we held that the statute was not mandatory; the prosecution need not apply for a certificate so as to extradite a material witness in a pending cause. The statute authorizing the requiring of bail by a material witness permits the court to demand it if he believes that there would be a loss of the testimony of such witness if he does not attend.\* There could not be a loss of the testimony of this witness as he had already testified. Testimony taken before a magistrate may be read if the witness is not present and reasonable effort has been made to subpoena the witness. In *People* v. *Veitenheimer,* 229 Mich. 409, we held that upon a showing that the witness had enlisted in the army and was not in the State, his testimony taken at the examination could be read. See, also, *People* v. *Gibson,* 253 Mich. 476; *People* v. *Droste,* 160 Mich. 66. Nor is the fact that defendant did not have an attorney at the hearing before the magistrate but cross-examined the witness herself sufficient reason for not using Carue's testimony. In *People* v. *Myers,* 239 Mich. 105, we held that the testimony before an examining magistrate might be read at the subsequent trial even though there had been no previous cross-examination of the witness, it being only

---

\* See 3 Comp. Laws 1929, § 17249 (Stat. Ann. § 28.975).—RE-PORTER.

necessary that an opportunity for cross-examination had been present. It was not a question for the jury to determine whether a sufficient effort had been made to secure Carue's attendance. A request to that effect was made to the trial judge who, acting within his discretion, properly refused such request. In view of the above cited cases, we believe it was a matter of judicial discretion in this case, and it was not abused.

The only other claim that has sufficient merit to be discussed is whether the judge erred in refusing to give a charge proffered by defendant's counsel, that the burden was upon the people to prove that defendant did not act in self-defense. Had the judge charged that the burden was upon the defendant to prove self-defense, it would be necessary for us to discuss the cases cited by defendant's counsel. The judge delivered a very fair charge in which he set forth the incidents leading up to the tragedy. He stated that defendant claimed that she acted in self-defense, and that Hunley made an assault upon her with the shotgun; that he struck her and kicked her and threw her on the ground, and that she, in fear of her life, thought of the knife on the window sill, and that she intended to injure him to some extent but not to take his life. The judge instructed the jury that she had a right to act in self-defense to save herself from serious bodily harm. He further stated that she claimed she had been in fear of Hunley for many years, and, in support of her claim, that she had offered testimony to show that Hunley was a person of bad character, addicted to the use of intoxicating liquor, and on the night in question he was under the influence of liquor to some extent. The judge instructed the jury to look into the character and reputation of Hunley as bearing upon defendant's mental attitude, whether she was in fear

of her life or not. The judge further charged the presumption of innocence prevailed through the case and "The burden of proof is of course on the prosecution to establish guilt beyond a reasonable doubt in order to justify a verdict of guilty of any of the offenses involved here." The judge was not obliged to charge specifically that the burden was upon the people to prove that the killing was not done in self-defense. A very fair charge was given. The prosecutor, in fairness to defendant, did not raise the question whether the theory of self-defense applies if the jury should find that defendant was the aggressor. See *People* v. *Piper,* 112 Mich. 644. As was stated in *People* v. *Tubbs,* 147 Mich. 1, where a similar question was presented and where the trial judge had given an instruction not to acquit on the ground of self-defense unless the facts constituting such defense have been established by the defendant, upon examination of the charge as a whole "it was clearly not the intention of the judge to say to the jury that the burden rested upon the defendant to prove his innocence," and that the charge "that the burden was placed upon the people to establish the defendant's guilt beyond a reasonable doubt," was sufficient.

Conviction affirmed.

BUSHNELL, SHARPE, BOYLES, REID, NORTH, and STARR, JJ., concurred. CARR, J., did not sit.