[No. 39111. Department One. April 25, 1968.]

THE STATE OF WASHINGTON, *Respondent*, v. CLAUDE W. MARTIN, *Appellant.**

*Reported in 440 P.2d 429.

*W. Walters Miller* and *Miller & Sackmann,* for appellant.

*Paul Klasen,* for respondent.

WARD, J.†—The defendant was charged in justice court in the city of Moses Lake with speeding, a misdemeanor, and with the gross misdemeanor defined in RCW 46.52.020, generally referred to as the hit and run statute. He was convicted in justice court on both counts, and on appeal was again convicted on both counts in the superior court, and now appeals from the judgment entered on the jury's verdict.

The defendant's 14 assignments of error may be grouped for discussion as follows: (1) Error in denying defendant's motion to suppress evidence made before the commencement of trial; (2) errors in the admission and rejection of evidence during the trial; (3) error in the giving of instructions to the jury; (4) failure of the state to make a prima facie case on either count.

The facts which are pertinent to the issues raised are as follows. On July 6, 1965, at about 9 p.m., Airman Ed Downs was riding his black Honda motorcycle near the entrance to Larson Air Force Base, near Moses Lake. He was struck from the rear by a car. His motorcycle was thrown 75 feet from the highway and Airman Downs landed along side the road about 110 feet from where he was struck. He sustained a broken leg and other injuries, but dragged himself

---

†Judge Ward is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

to the edge of the highway where he was able to flag down a passing car by waving the white helmet which he wore at the time of the accident. He was given first aid by a passenger in the car that stopped. A piece of metal chrome auto stripping, one end of which was embedded about 3 inches in his buttocks was withdrawn and given to State Trooper Robert McBride who investigated the accident.

The automobile which struck Airman Downs did not stop at the scene of the accident and Airman Downs did not see the automobile. The only means of identification at that time was the strip of metal chrome which showed some light blue paint on its surface.

At about 1:30 a.m., on July 7, 1965, Trooper McBride was operating a radar check for speeders near one of the entrances to Larson Air Force Base and observed the defendant's car. He stopped his patrol car, took a radar reading and determined that the car was traveling 50 miles per hour in a 40-miles-per-hour zone. Trooper McBride overtook the speeding car and informed the driver, who was the defendant, that he would be arrested for speeding. Walking to the front of defendant's car, Trooper McBride noted that the right front fender of the car was dented, that a part of the chrome strip was missing, that there was black paint on the fender, and that this damaged area on the defendant's car appeared to be the only part of the car not covered by a coating of mud. Trooper McBride straightened out the piece of chrome stripping which was in his possession and noted that in length it matched the chrome missing from defendant's damaged right front fender. When asked about the missing chrome strip, defendant claimed that he ran into a ditch in Okanogan several days previously and disclaimed any knowledge of any hit and run accident.

The defendant was then requested to follow the trooper to Moses Lake in his own car, and at the Moses Lake police department, the defendant was issued a citation for speeding and for having a loaded gun in the car. The trooper then went to the home of the justice of the peace in Moses Lake and at about 2:30 a.m., filed a complaint against the

defendant under the hit and run statute and obtained a warrant for his arrest. The defendant was thereupon arrested on the hit and run charge and fully advised of his constitutional rights, after which the defendant stated that he had been home all evening and that no one had used his car. The following day photographs were taken of the defendant's automobile, some with the motorcycle placed in juxtaposition to the damaged fender. Paint samples were taken from defendant's car and sent with paint samples from the piece of metal chrome to the crime laboratory in Spokane for anaylsis and comparison. The two samples of paint registered almost identical readings on the spectograph.

The charge against the defendant for carrying a loaded weapon in a vehicle was dismissed and the loaded gun was not offered in evidence.

The defendant presented a pretrial motion to "suppress the testimony of Robert McBride and to suppress all additional physical evidence obtained by the said Robert McBride as the result of the unlawful arrest, search and seizure of defendant and defendant's 1956 Chevrolet Station Wagon . . . ." Defendant's counsel expressed the theory supporting his motion in the affidavit which he filed as follows:

> [T]he charge of speeding placed against the defendant was a ruse in attempt to obtain possession of the defendant and his automobile without warrant, and that the evidence unlawfully obtained by said officer was obtained as the result of an illegal search and seizure while said automobile was unlawfully under the control of said officer.

On the pretrial hearing the defendant testified that he was not arrested for speeding when stopped by the officer, but was arrested as a hit and run driver. State Trooper McBride testified that the sequence of the two arrests was as set out in the foregoing statement of facts. The trial court chose to believe the testimony of Trooper McBride rather than the testimony of the defendant. There was substantial evidence to sustain the trial court's conclusion.

Neither did the trial court believe that the arrest for speeding was merely a ruse by which the arresting officer sought to illegally obtain evidence of hit and run. We find nothing in the record which would justify us in setting aside the trial court's conclusion.

It may be noted that the jury found the evidence sufficient to convict the defendant on the speeding charge. The defendant appeals from the conviction on both counts, but in his brief he devotes to a discussion of the conviction of speeding one paragraph consisting of four lines without specific assignment of error and without citation of authorities. We cannot take his appeal on the speeding charge any more seriously than does the defendant himself.

The defendant urges that this case should be disposed of under the rule of *State v. Michaels*, 60 Wn.2d 638, 644, 374 P.2d 989 (1962): "An arrest may not be used as a pretext to search for evidence." It will be noted, however, that there was a vital difference in the facts in *State v. Michaels*. In that case the court said at 644: "In the present case there is no pretense that the arrest was made with any idea in mind except to gain access to the automobile and search it; . . . ." Also, at 645:

> The evidence in this case conclusively shows that the arrest was made for the sole purpose of searching the automobile to ascertain whether it contained any contraband property. It was a mere pretext for the search and was therefore unlawful. Consequently, the defendant's motions to suppress should have been granted.

In one other important respect, *State v. Michaels, supra,* is distinguishable from the instant case. In *Michaels* the trunk of the defendant's car was opened and searched, and a gambling device was discovered. In the present case, the evidence to which the defendant's motion to suppress was directed, consisted of the following items: (1) a chrome strip which originally came from defendant's car, but which was handed to the state trooper at the scene of the accident after the end of it had been removed from Airman Downs' body; (2) a set of photographs of the defendant's automobile taken after his arrest on the hit and run charge

while the automobile was in the police parking lot near the Moses Lake jail where the defendant had himself parked the car; (3) an envelope containing some flecks of blue paint taken from the fender of defendant's car after his arrest for hit and run. None of these items of evidence could be considered the product of a search.

■ No search under the constitutional interdiction takes place when items having evidentiary value are outside a building and in plain view, nor if they are in plain sight inside a building to which access has been lawfully gained. *See State v. LaPierre,* 71 Wn.2d 385, 428 P.2d 579 (1967), and cases cited therein. *See also* 47 Am. Jur., *Search and Seizure* § 20 (1943).

In *Tacoma v. Houston,* 27 Wn.2d 215, 219, 177 P.2d 886 (1947), we said:

> If the entry was lawful, then it was proper for the officers to testify concerning those things that were open and plainly visible to them. *State v. Llewellyn,* 119 Wash. 306, 205 Pac. 394; *State v. Miller,* 121 Wash. 153, 209 Pac. 9; *State v. Nilnch,* 131 Wash. 344, 230 Pac. 129; *State v. Nelson,* 146 Wash. 17, 261 Pac. 796; *State v. Parent,* 156 Wash. 604, 287 Pac. 662.

See also *State v. Rinkes,* 70 Wn.2d 854, 857, 425 P.2d 658 (1967).

The arrest for speeding, being a lawful arrest, the arresting officer was not required to close his eyes or turn his back in order to avoid seeing evidence of a hit and run offense. As we said in *State v. Roff,* 70 Wn.2d 606, 610, 424 P.2d 643 (1967):

> It has been said that police officers "Once in the apartment lawfully, . . . need not 'look the other way, or disregard the evidence [their] senses bring [them]', for 'mere observation' does not 'constitute a "search"'." *United States v. Scott,* 149 F. Supp. 837, 841 (D.C. Cir. (1957)).

The appellant claims that there was error in the admission of evidence in the superior court. He contends that he was denied his constitutional right of confrontation with witnesses against him under article 1, section 22 of the Washington State Constitution. This claim of error is based

622

upon the admission in evidence of the tape-recorded testimony of two of the state's witnesses in justice court who there testified under oath, were cross-examined by defendant's present counsel, and who at the time of the trial in the superior court were outside the state of Washington. His claim of error is not based on the use of the tape recording, rather than the oral testimony of the justice of the peace, in fact, he expressed approval of the form in which the testimony was presented. He claims, however, that it was error to use the former testimony without first showing that the state had attempted to procure the return of the witnesses from out of state under the provisions of RCW 10.55.060, the uniform act to secure the attendance of witnesses from without a state in criminal proceedings.

In *State v. Ortego*, 22 Wn.2d 552, 563-64, 157 P.2d 320, 159 A.L.R. 1232 (1945), we stated three requirements for use of former testimony in a subsequent trial as follows:

(1) that the witness whose testimony is sought to be produced is unavailable because of his death, insanity, or physical disability preventing his appearance in court, *or his absence from the state or jurisdiction of the court without the connivance of the party seeking to introduce the testimony of such witness,* or his absence when after diligent search and due inquiry he cannot be found, or his absence resulting from some other contingency of equal preventive force and gravity; (2) that such witness was sworn and testified in the former trial, and that the accused was present and had an opportunity for cross-examination; and (3) that the person through whom the testimony of the absent witness is sought to be reproduced will state, under oath, that he heard, remembers, and can relate the substance of all the testimony of such absent witness, or at least the substance of all such testimony on the particular subject sought to be proved. (Italics ours.)

These three prerequisites were met in this case.

 There is nothing in RCW 10.55 which supports the defendant's contention. The statute merely sets up machinery whereby witnesses out of this state may be brought into the criminal courts of this state from states having reciprocal provisions. Nothing in RCW 10.55 makes its use

mandatory nor its attempted use a condition precedent to use of the procedure approved in *State v. Ortego, supra,* and we do not find that the defendant's constitutional right of confrontation was denied under the facts of this case by the state's failure to first attempt to procure return of the two witnesses under the uniform act.

This is a question of first impression in this state, but the Supreme Court of Arizona in *State v. Jordan,* 83 Ariz. 248, 320 P.2d 446 (1958), reached the same conclusion even though the location of the witness in another state having a reciprocal uniform act was known. The same conclusion was reached in *State v. Leggroan,* 15 Utah 2d 153, 389 P.2d 142 (1964); also in *People v. Serra,* 301 Mich. 124, 3 N.W.2d 35 (1942); *People v. Hunley,* 313 Mich. 688, 21 N.W.2d 923 (1946); *People v. Day,* 219 Cal. 562, 27 P.2d 909 (1933); *People v. Daboul,* 234 Cal. App. 2d 800, 44 Cal. Rptr. 744 (1965); and *People v. Dozier,* 236 Cal. App. 2d 94, 45 Cal. Rptr. 770 (1965). The only contrary authority we find is *State v. Tyler,* 187 Kan. 58, 353 P.2d 801 (1960). In the *Tyler* case, the witness was in an adjoining state and could have been reached by an automobile trip of about 3 hours. It may also be noted that the Supreme Court of Kansas has now receded from the position taken in *State v. Tyler, supra,* and would not apply the rule of that case in a situation similar to the facts present here. *State v. Lesco,* 194 Kan. 555, 400 P.2d 695 (1965).

In the present case the two witnesses' whereabouts were not definitely known, they had jumped bail on a vagrancy charge several months before the superior court trial, had gone to Clovis, New Mexico, and their bail bondsmen could not locate them.

The objections of the defendant to the admission of other items of evidence were without merit.

Nor is there merit in the defendant's assignments of error Nos. 12, 13 and 14, challenging the sufficiency of the evidence to sustain a conviction.

The final assignment of error is directed to instructions given and refused, particularly to instruction No. 8, given as follows:

You are instructed that it is immaterial insofar as this case is concerned whether or not the Defendant knew that he struck Airman, Ed Downs.

The law imposes upon every driver of a motor vehicle along a public highway the duty to pay sufficient attention to his driving, that he will see and know if his vehicle strikes persons upon a public highway.

RCW 46.52.020 sets out the duty imposed upon the operator of a vehicle who has become involved in an accident. Briefly, the duties imposed, if injury or death result, or if another attended vehicle is damaged, are as follows: (1) He shall stop at or as near the scene of the accident as possible; (2) he shall return to the place where the accident occurred and remain until the requirements of subsection (3) be fulfilled. Subsection (3) requires that the operator of the vehicle give his name, address and vehicle license number, exhibit his vehicle operator's license and render any person injured reasonable aid, including arrangements for transportation of the injured to a place where medical facilities are available.

The statute is silent on the matter of knowledge of the accident on the part of the operator of a vehicle as a necessary element of the offense defined. The question has not previously been before this court. The following text statement from 7 Am. Jur. 2d *Automobiles and Highway Traffic* § 247 (1963) indicates, however, that the question has been before the courts of several other states. The text reads:

Under a statute which imposes a duty upon a motorist involved in an accident causing damage or injury to another to stop, identify himself, etc., knowledge of the damage or injury is generally a prerequisite to a conviction for the violation thereof, even though the statute does not expressly require knowledge on the part of an accused motorist. Knowledge of such damage or injury is, of course, particularly an element of the offense under a statute which imposes such duty upon a motorist who "knowingly" collides with or causes injury to any person. However, it is not absolute and positive knowledge which must be shown before the offense is proven, but rather it need only be shown that the circumstances were such that a reasonable man would have believed that an acci-

dent had occurred resulting in damage or injury to another. In other words, if an injury is inflicted under such circumstances as would ordinarily induce the belief in a reasonable person that injury would result, or had resulted, from the accident or collision, then it is the duty of the motorist to stop and otherwise obey the mandate of the statute.

In a few jurisdictions it has been held that it is not necessary to allege and prove knowledge to convict a motorist of violation of a statute requiring motorists involved in accidents to stop, identify themselves, etc., where the statute does not make knowledge of the accident a part of the offense. It is reasoned that in most cases it would be impossible for the state to prove scienter beyond a reasonable doubt, while the accident itself might properly be proven. (Footnotes omitted.)

See also Annot. 16 A.L.R. 1425; 66 A.L.R. 1228, and 101 A.L.R. 913. Leading cases supportive of the majority position include *State v. Parish,* 79 Idaho 75, 310 P.2d 1082 (1957); *People v. Rallo,* 119 Cal. App. 393, 6 P.2d 516 (1931); *People ex rel. O'Connor v. Hirsch,* 241 App. Div. 712, 269 N.Y.S. 830 (1934); *Behrens v. State,* 140 Neb. 671, 1 N.W.2d 289 (1941); *Scott v. State,* 90 Tex. Crim. 100, 233 S.W. 1097, 16 A.L.R. 1420 (1921); *Herchenbach v. Commonwealth,* 185 Va. 217, 38 S.E.2d 328 (1946); *People v. Holford,* 63 Cal. 2d 74, 403 P.2d 423 (1965).

It was error to submit to the jury instruction No. 8. The statute RCW 46.52.020 imposes upon the driver of a vehicle a positive, affirmative course of action; it specifically designates several acts following the accident which the operator of the vehicle must do to avoid the statutory penalty. It is inconceivable that the legislature intended that punishment would be imposed for failure to follow the course of conduct outlined, if the operator of the vehicle was ignorant of the happening of an accident. If he knowingly has an accident, such as the statute mentions, and does not stop, he has violated the statute.

Generally, the state must rely upon circumstantial evidence to prove knowledge. The legislature has recognized the difficulty of proving knowledge in those cases where it

is a necessary element of the criminal offense. RCW 9.01.010, part of our criminal code, contains this provision:

[K]nowledge of any particular fact may be inferred from the knowledge of such other facts as should put an ordinarily prudent man upon inquiry.

In *State v. Salzman,* 186 Wash. 44, 47, 56 P.2d 1005 (1936), we said:

Guilty knowledge is an element in these cases which can rarely be proven by direct and positive testimony. Ordinarily it must be found by inference from all the facts and circumstances surrounding the transaction.

In *State v. Parish, supra,* the court said at 80:

Knowledge on the part of the accused of the accident resulting in injury to another person does not require a showing by the state, by direct testimony, that the accused actually knew that the motor vehicle he was driving had struck some one. All of the facts and circumstances indicative of knowledge of such an accident may be considered by the jury in its determination of the fact of knowledge. In People v. Pahner, supra, it is stated [10 Cal. App. 2d 294, 51 P.2d 1144]:
"It is hardly to be expected that direct testimony could be obtained in such a case as this to the effect that a defendant knew that he had injured another person. From the nature of the case, such knowledge on the part of a driver, although a necessary element of the offense, must usually be proved by showing the surrounding facts and circumstances which indicate such a knowledge."

In *People v. Holford, supra,* the court said at 80:

Usually, however, such knowledge must be derived from the surrounding facts and circumstances of the accident. . . . Yet the driver who leaves the scene of the accident seldom possesses actual knowledge of injury; by leaving the scene he forecloses any opportunity to acquire such actual knowledge. Hence a requirement of actual knowledge of injury would realistically render the statute useless. We therefore believe that criminal liability attaches to a driver who knowingly leaves the scene of an accident if he actually knew of the injury or if he knew that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person. (Footnote omitted.)

■ The final question for determination is whether prejudice, requiring a new trial, resulted to the defendant from the giving of instruction No. 8. The rule is now definitely established in this state that the verdict of the jury in a criminal case will be set aside and a new trial granted to the defendant, because of an error occurring during the trial of the case, only when such error may be designated as prejudicial. *State v. Hazzard*, 75 Wash. 5, 134 Pac. 514 (1913); *State v. Gaines*, 144 Wash. 446, 258 Pac. 508 (1927); *State v. Britton*, 27 Wn.2d 336, 178 P.2d 341 (1947); *State v. Clayton*, 32 Wn.2d 571, 202 P.2d 922 (1949); *State v. Moore*, 35 Wn.2d 106, 211 P.2d 172 (1949); *State v. Wilson*, 38 Wn.2d 593, 231 P.2d 288 (1951); *State v. Gellerman*, 42 Wn.2d 742, 259 P.2d 371 (1953); *State v. Mesaros*, 62 Wn.2d 579, 384 P.2d 372 (1963).

A prejudicial error may be defined as one which affects or presumptively affects the final results of the trial. *State v. Britton, supra.* When the appellate court is unable to say from the record before it whether the defendant would or would not have been convicted but for the error committed in the trial court, then the error may not be deemed harmless, and the defendant's right to a fair trial requires that the verdict be set aside and that he be granted a new trial. But, where the defendant's guilt is conclusively proven by competent evidence, and no other rational conclusion can be reached except that the defendant is guilty as charged, then the conviction should not be set aside because of unsubstantial errors. 5 Am. Jur. 2d *Appeal and Error* § 786 (1962). To determine whether prejudice has resulted, it is necessary that the appellate court examine the entire record. *State v. Mesaros, supra; State v. Britton, supra.*

We are convinced, from our examination of the record in this case, that no such prejudicial error resulted from the giving of instruction No. 8. The record discloses that there was no dispute in the evidence presented to the jury with respect to the happening of the events upon which the criminal charge was based. The defendant did not take the witness stand, and he adduced no testimony in his own

behalf except three character witnesses. This is not a case of something being hit with the extreme end of a bumper or perhaps brushed with a fender, *i.e.*, a case in which the impact might escape the attention of the driver. Here, the defendant hit Ed Downs from the rear, embedding a piece of chrome in his buttocks. The blow was so terrific that the motorcycle was thrown 75 feet; the rider, 110 feet. The car came into contact with the motorcycle just below the car's right front headlight. There can be no question that the motorcycle was revealed by the headlights. None of these facts were disputed, there was no evidence to the contrary, and, under this state of the evidence, no decision other than guilty as charged could have been reached by the jury. Therefore, no prejudicial error resulted from the giving of instruction No. 8. The conviction on both the speeding charge and the hit-and-run charge must be affirmed.

FINLEY, C. J., HILL, WEAVER, and HALE, JJ., concur.

---

July 16, 1968. Petition for rehearing denied.