PEOPLE *v.* EASTHAM

WITNESSES—MATERIAL WITNESS—READING TO JURY TESTIMONY TAKEN AT PRELIMINARY EXAMINATION—CRIMINAL LAW—DISCRETION.

> Testimony of a material witness taken at a preliminary examination, where the right to cross-examination exists, may be read to the jury in a criminal prosecution if the witness is not present and reasonable effort has been made to subpoena the witness, and conviction at trial will not be reversed in the absence of abuse of discretion by the trial court.

Appeal from Oakland, Clark J. Adams, J. Submitted Division 2 November 13, 1970, at Lansing. (Docket No. 8725.) Decided December 7, 1970. Leave to appeal denied February 18, 1971. 384 Mich 808.

David Eastham was convicted of uttering and publishing. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Thomas G. Plunkett,* Prosecuting Attorney, and *Dennis Donohue,* Chief Appellate Counsel, for the people.

*Smith, Magnusson & Anderson* (by *Douglas A. Chartrand*), for defendant.

Before: QUINN, P. J., and DANHOF and CARROLL,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

---

REFERENCE FOR POINTS IN HEADNOTE
21 Am Jur 2d, Criminal Law §§ 343, 344, 367.

PER CURIAM. Defendant appeals from conviction of the offense of uttering and publishing, CL 1948, § 750.249 (Stat Ann 1962 Rev § 28.446). The sole issue raised on appeal is whether the reading of testimony of an absent witness from a preliminary-examination transcript violated defendant's Sixth Amendment right of confrontation.

The witness, Linda Wilkins, testified at the preliminary examination to the effect that she cashed stolen checks on which the defendant had typed her name. She testified further that after cashing checks amounting to more than $3,000, she returned the money to defendant who then gave her $200 and an automobile and instructed her to leave the state. She drove to California where she was arrested for another crime and was returned to Michigan by the Pontiac Police Department. It was within a few days thereafter that she testified at the preliminary examination at which time she was cross-examined.

Later she pleaded guilty to uttering and publishing and was released on a $200 bond while awaiting sentence. Prior to trial the police attempted to subpoena Linda Wilkins and came to the conclusion that she had left the state.

The trial court held that the testimony of Linda Wilkins given at the preliminary examination could be read into the record at trial because the police made a reasonable effort and were unable to find and serve process upon her. Defendant appellant's brief reveals the following testimony was given by Detective Martinez, the officer in charge of the case:

"*Q.* Did you, during your investigation, make an effort to locate a witness in this case, named Linda Wilkins?

"*A.* I made several attempts to locate her.

"*Q.* Specifically, for the jury term now in session, was she one of the names subpoenaed to be here today?

"*A.* Yes, she was.

"*Q.* Did you have an address for her at that time?

"*A.* Yes, I did.

"*Q.* What was the address?

"*A.* 246 State Street, Pontiac.

"*Q.* Was she living with anyone at that address?

"*A.* With her children.

"*Q.* Did you go to that address in an effort to try to serve a summons?

"*A.* Yes, I did.

"*Q.* And do you recall when that was you went there?

"*A.* Approximately three weeks ago. I don't recall the exact date.

"*Q.* And did you speak to anyone? Did you find anyone there?

"*A.* Yes, I found the people in the downstairs apartment. They informed me she had moved approximately—

"*Mr. Cunningham:* I will object to the hearsay testimony, your Honor, and ask that it be stricken.

"*The Court:* It may be stricken.

"*Q.* Were you satisfied that Linda Wilkins was not in the building?

"*A.* Yes, I was. The apartment was vacant where she was living.

"*Q.* Were you able to find her through any other leads that you could produce?

"*A.* No, I was not.

"*Q.* Can you tell me of any other efforts that were made to try to locate her?

"*A.* Yes. I talked to the landlord of the residence at 246. I talked to her sister, her parents, neighbors, friends. All they could tell me is that—

"*Q.* You can't say of course what they told you, because that's hearsay. But based on your contact

with all these different people, were you able to find Linda Wilkins?

"*A*. No.

"*Q*. Were you able to reach any conclusion as to whether she was in the State of Michigan?

"*A*. Yes.

"*Mr. Cunningham:* I object to that as being a conclusion on the part of the witness, your Honor.

"*The Court:* He may answer.

"*A*. Yes.

"*Q*. What was your conclusion?

"*A*. That she was not in this area.

"*Q*. Was she in this state?

"*A*. No."

He testified further as follows:

"*Q*. Now Detective Martinez, do you know for a fact whether or not Mrs. Wilkins was under arrest at any time that you have known her?

"*A*. Yes. She was.

"*Q*. Did you go to the State of California to return her to this state?

"*A*. I never. There was some other officers that went after her from our department.

"*Q*. Some Pontiac police officers went to California and returned her to Pontiac?

"*A*. That's correct.

"*Q*. What did they do with her after they got her back here?

"*A*. They arrested her for the charge of "uttering and publishing".

"*Q*. And at one time the Pontiac Police Department went completely out to the State of California to return her, did they not?

"*A*. Authorized by the Oakland County prosecutor's office.

"*Q*. That wasn't my question. Again, Detective Martinez, my question was at one time the Pontiac Police Department went completely out to the State of California to return her, did they not?

"*A*. That's right.

"*Q.* And you are unable to produce her today. Is that right?

"*A.* That's right."

The law is well settled in Michigan that where a good faith effort is made to locate and produce an indorsed witness, testimony formerly given at the preliminary examination, where the right to cross-examination exists, is admissible at trial and conviction at trial will not be reversed in the absence of abuse of discretion by the trial court. *People* v. *Hunley* (1946), 313 Mich 688; *People* v. *Myers* (1927), 239 Mich 105.

We here conclude that there was no abuse of discretion by the trial court.

Affirmed.