RENDERED: NOVEMBER 6, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1192-MR

ERIC GLEN BECK                                   APPELLANT

               APPEAL FROM MUHLENBERG CIRCUIT COURT
v.               HONORABLE BRIAN WIGGINS, JUDGE
                   ACTION NO. 19-CR-00123

COMMONWEALTH OF KENTUCKY                     APPELLEE

AND                    NO. 2019-CA-1413-MR

STEFFANY L. TEAGUE                               APPELLANT

               APPEAL FROM MUHLENBERG CIRCUIT COURT
v.               HONORABLE BRIAN WIGGINS, JUDGE
                   ACTION NO. 19-CR-00122

COMMONWEALTH OF KENTUCKY                     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, MCNEILL, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  Eric Beck and Steffany Teague (hereinafter referred to collectively as "the appellants") appeal from orders of the Muhlenberg Circuit Court which denied their motions to suppress.  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

Detective Troy Gibson of the Pennyrile Narcotics Task Force was contacted by a confidential informant (hereinafter referred to as "CI") with information that Treasia Griffin had been using methamphetamine and was buying it from a house across the street.  Detective Gibson picked up the CI in order to try and make contact with Griffin.  Detective Gibson drove the CI to the area of the residence and dropped him off near the residence.  Detective Gibson was concerned he might be recognized and chose not to get near the Griffin residence or stay in the immediate area.  Detective Gibson then went to a nearby Walmart to wait for the CI.

Griffin was not at home so the CI went into the residence across the street.  The occupant of that residence allowed the CI inside.  While inside, the CI saw a methamphetamine pipe laying on the table and a container with apparent methamphetamine in it.  The CI did not buy methamphetamine at that time and

was not wearing any recording devices. When the CI made contact with Detective Gibson, he informed the detective of the container of methamphetamine and the methamphetamine pipe. The CI also informed the detective that a few weeks prior he witnessed in that same residence a freezer bag containing methamphetamine. The CI described the residence's inside and outside layouts to the detective and described a vehicle parked in the driveway. The CI also indicated there was a man and a woman present in the residence.

The next day, Detective Gibson called his dispatch and tried to discover the names of the people living there, but was unable to. The CI informed the detective that he believed the name of the man in the residence to be Troy Donovan. Another detective then drove by the residence to confirm the vehicle was present and that the outside of the residence looked the way it was described by the CI. After confirming these details, the detective then went to the county attorney's office to fill out an affidavit for a search warrant. After this affidavit was completed the detective was able to obtain a search warrant.

The detective then executed the search warrant. The detective testified that the inside of the residence was as the CI described it. Inside the residence the detective found 15 grams of methamphetamine, a methamphetamine pipe, pills, and marijuana. The appellants were present in the house and they were both arrested. There was no Troy Donovan there. The detective later asked the CI

about the discrepancy of Mr. Beck being at the residence and not Troy Donovan. The CI informed the detective that the man he met at the house he called Troy and was not corrected. The theory at the suppression hearing was either Troy Donovan was at the residence the day the CI was there, but not there the day the search warrant was executed, or that the CI mistakenly believed Mr. Beck's name was Troy Donovan.

The appellants later filed motions to suppress the evidence seized due to false or misleading information in the search warrant affidavit and that the affidavit lacked probable cause to issue a search warrant. A hearing was held on June 24, 2019, where Detective Gibson testified about the facts surrounding the investigation, the obtaining of the search warrant, and the execution of the search warrant. The trial court denied the motions to suppress orally from the bench. On July 5, 2019, the trial court entered an order denying the motions. The court held that there were no intentionally false and misleading statements in the warrant affidavit and that there was probable cause to issue the search warrant.

Mr. Beck then entered into a conditional guilty plea in which he pleaded guilty to first-degree trafficking in a controlled substance, methamphetamine in an amount of two grams or more.[1] Ms. Teague also entered into a conditional guilty plea in which she pleaded guilty to first-degree trafficking

---

[1] Kentucky Revised Statutes ("KRS") 218A.1412(1)(b).

in a controlled substance, methamphetamine in an amount less than two grams.[2] The appellants reserved their right to appeal the orders denying their motions to suppress. This appeal followed.

## ANALYSIS

The appellants argue on appeal that there were false and misleading statements in the affidavit and that the affidavit did not establish probable cause to issue the search warrant. The appellants also take issue with Detective Gibson only relying on the CI's information and taking no steps to independently investigate the information.

> Our standard of review of a circuit court's decision on a suppression motion following a hearing is twofold. First, the factual findings of the court are conclusive if they are supported by substantial evidence. The second prong involves a *de novo* review to determine whether the court's decision is correct as a matter of law.

*Stewart v. Commonwealth*, 44 S.W.3d 376, 380 (Ky. App. 2000) (footnotes and citations omitted). When reviewing a motion to suppress, we use the totality of circumstances analysis set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair

---

[2] KRS 218A.1412(1)(e).

probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Id.*, 462 U.S. at 238-39, 103 S.Ct. at 2332 (citation omitted). Generally, "a judge is bound by the four corners of the affidavit when determining whether to issue or deny a search warrant." *Smith v. Commonwealth*, 323 S.W.3d 748, 753 (Ky. App. 2009). An exception to this four-corner rule is if a defendant can show that the affidavit contained false or misleading statements.

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978).

Here, the appellants argue that Detective Gibson using the name "Troy Donovan" in the affidavit was false and misleading because no Troy

Donovan was found in the house when it was searched. The trial court found this argument without merit and we agree. Here, there was no evidence that Detective Gibson intentionally mislead the issuing judge by using the name Troy Donovan. The evidence presented at the suppression hearing indicated that either the CI truly believed the man he met the night he entered the residence was named Troy Donovan and was mistaken, or that the CI met Troy Donovan the night he entered the residence and Mr. Donovan was not present when the search warrant was executed.

The trial court also held that even if it were to remove the name Troy Donovan from the affidavit, there would still be probable cause to issue the warrant. Again, we agree with the trial court. The CI relayed information to the detective that methamphetamine was being sold from the residence at issue, that methamphetamine was present the night he entered the residence, and that he had seen methamphetamine in that residence in the past. The CI was also a long-term informant who had been used by Detective Gibson in the past. All of this supported the probable cause determination by the issuing judge that contraband or evidence of a crime would be found in the residence at issue.

The appellants also take issue with the lack of an independent investigation by Detective Gibson. For example, there was no evidence that the detective ran the license plate of the car in the driveway, no follow-up about the

current owner of the residence aside from calling the detective's dispatch and inquiring into ownership, and no surveillance of the residence. In addition, the detective did not personally witness the CI go into the residence and the CI was not wearing a video or audio recording device.

While an independent investigation by the detective could have provided more evidence to support probable cause and would have been valuable, *Gates*, 462 U.S. at 242, 103 S.Ct. at 2334, it was not necessary here.

> Typically, a bare and uncorroborated tip received from a confidential informant, without more, would be insufficient to establish probable cause for a search warrant. . . . As stated *supra*, the totality of the circumstances test requires a balancing of the relative indicia of reliability accompanying an informant's tip. Thus, while a court may question an informant's motives, an "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles [the informant's] tip to greater weight than might otherwise be the case."

*Lovett v. Commonwealth*, 103 S.W.3d 72, 78 (Ky. 2003) (citations omitted). Here, the CI specifically described the residence and vehicle in the driveway which allowed the police to drive by, corroborate the location, and get the address, which was included in the affidavit. The CI also specifically described the drugs in the residence and where they were located. This was sufficient to meet probable cause.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court. After reviewing the totality of the circumstances in this case it is clear that the finding of probable cause was supported by substantial evidence.

ALL CONCUR.

BRIEFS FOR APPELLANT ERIC
GLEN BECK:

Adam Meyer
Assistant Public Advocate
Department of Public Advocacy
Frankfort, Kentucky

BRIEF FOR APPELLANT
STEFFANY L. TEAGUE:

Molly Mattingly
Assistant Public Advocate
Department of Public Advocacy
Frankfort, Kenutucky

BRIEFS FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Lauren Lewis
Assistant Attorney General
Frankfort, Kentucky